575 S.E.2d 335

**Danny Scott WILKINSON, Administrator of the Estate of Teddi D. Wilkinson, Plaintiff Below, Appellee,**

v.

**W. Rexford DUFF, M.D.; Bariatrics, Inc., of West Virginia, a West Virginia corporation; Defendants Below, Appellants David Life, M.D.; and Montgomery General Hospital, Inc., a West Virginia corporation, Defendants Below,**

**and**

**W. Rexford Duff, M.D., and Bariatrics, Inc. of West Virginia, Plaintiffs Below, Appellants,**

v.

**Eon Laboratory Manufacturers, Inc., and Calvin Scott and Co., Inc., Third–Party Defendants Below, Appellees.**

No. 30399.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 29, 2002.

Decided Dec. 5, 2002.

Dissenting Opinion of Justice McGraw Dec. 11, 2002.

Michael M. Fisher, Esq., Cheryl A. Simpson, Esq., Offutt, Fisher & Nord, Huntington, for the Appellants.

Jeffrey A. Grove, Esq., Lester C. Hess, Esq., Bachmann, Hess, Bachmann & Garden, PLLC, Wheeling, Ray. M. Aragon, Esq., Kurt J. Hamrock, Esq., McKenna, Long & Aldridge, LLP, Washington, D.C., for Appellee Eon Labs, Inc.

Thomas M. McCulloch, Esq., Wheeling, for Appellee Calvin Scott & Co., Inc.

Brentton W. Wolfingbarger, Esq., James D. McQueen, Jr., Esq., Chanin Wolfingbarger Krivonyak, Esq., McQueen, Harmon & Murphy, LC, Charleston, for Appellee Danny Scott Wilkinson.

PER CURIAM.

In this appeal from the Circuit Court of Kanawha County, we are asked to examine an order granting summary judgment to two appellees in a "failure to warn" products liability case. After careful examination of the record, we conclude that the appellant failed to show evidence of a genuine issue of material fact that the appellees had a duty to warn of certain hazards regarding their product, and failed to show evidence of a genuine issue of material fact that the warnings or lack thereof on the appellees' product was a proximate cause the injuries complained of. As set forth below, we affirm the circuit court's summary judgment order.

I.

On January 22, 1998—approximately seven weeks after giving birth to her third child—28-year-old Teddi Wilkinson visited a weight loss clinic in Charleston, West Virginia, that

was owned and operated by appellant and defendant-below Bariatrics, Inc. At the clinic, Mrs. Wilkinson was attended to by a doctor, appellant and defendant-below W. Rexford Duff.

Dr. Duff asserts that he obtained a medical history from Mrs. Wilkinson, conducted an examination, discussed diet and exercise, and finally prescribed the drug phentermine to assist her in losing weight. One potential side effect associated with phentermine is elevated blood pressure. Dr. Duff's records suggest that Mrs. Wilkinson never told Dr. Duff that she was "postpartum"—that is, had recently given birth—or might be breast feeding her newborn child. However, Dr. Duff's records also suggest that he never asked Mrs. Wilkinson, either orally or in his medical history questionnaire, whether she was postpartum or breast feeding.

Four days later, Mrs. Wilkinson began experiencing severe chest pain, and thereafter went into cardiac arrest. Mrs. Wilkinson suffered irreversible brain damage from oxygen deprivation during her cardiac arrest, and later died. A post-mortem autopsy revealed that Mrs. Wilkinson had suffered a heart attack triggered by a spontaneous right coronary artery dissection. The inner lining of Mrs. Wilkinson's right coronary artery had separated from the outer lining, clogging the artery and depriving the heart muscle of oxygen.

Mrs. Wilkinson's husband, plaintiff below Danny Wilkinson, subsequently filed a medical malpractice action against Dr. Duff and Bariatrics, Inc.[1] Mr. Wilkinson asserted that his wife's use of the phentermine prescribed by Dr. Duff elevated her blood pressure which, in turn, caused her coronary artery to spontaneously dissect. Experts retained by Mr. Wilkinson suggested that women who are postpartum and breast feeding are at a heightened risk of experiencing adverse reactions to phentermine. These same experts concluded that Dr. Duff had performed an "unbelievably superficial" and "totally inadequate examination" of Mrs. Wilkinson, such that he did not notice she had recently given birth and was breast feeding.

The experts retained by Mr. Wilkinson also stated that various guidelines indicate that phentermine should only be used in "the treatment of exogenous obesity for patients with a body mass index (weight in kilograms divided by height in meters, squared) equal to or greater than 30[.]" Mrs. Wilkinson's body mass index, as calculated by Dr. Duff, was only 25.5. Accordingly, Mr. Wilkinson's experts concluded Dr. Duff was negligent in ignoring the guidelines and prescribing phentermine to Mrs. Wilkinson.

Dr. Duff has consistently denied that the phentermine played any role in the decedent's death, and steadfastly maintains there is nothing dangerous about the drug. However, Dr. Duff asserts that he fashioned his oral and written questions to his patients after the labeling and warning inserts provided by the manufacturer and distributor of the phentermine, third-party defendants below and appellees Eon Labs, Inc. and Calvin Scott & Company, respectively. Dr. Duff contends that those labels and warning inserts provided no warnings about the alleged heightened risk that phentermine poses to postpartum and breast feeding women. Accordingly, Dr. Duff contends that the phentermine was defective and unreasonably dangerous for its intended use because of the improper labeling and warning inserts.

Dr. Duff therefore suggests that, if the phentermine he prescribed to Mrs. Wilkinson caused or contributed to her death, then the manufacturer and distributor are partly liable under a products liability theory. Ac-

1. Mr. Wilkinson also brought a malpractice action against Montgomery General Hospital and Dr. David Life. On the morning of January 26, 1998, Mrs. Wilkinson began experiencing chest pains at the college where she was a professor of nursing. A colleague measured her blood pressure as being 200/140. At 11:55 a.m., Mrs. Wilkinson was taken to the Montgomery General Hospital emergency room where she was seen by Dr. Life. An electrocardiogram test was performed, and although the machine indicated the test results were "abnormal," Dr. Life concluded the results were within normal limits. Mrs. Wilkinson was released from the hospital at approximately 2:00 p.m., and four hours later suffered the cardiac arrest that ended her life.

Montgomery General Hospital and Dr. Life have settled with Mr. Wilkinson, and are no longer parties to this action.

cordingly, to preserve his rights to contribution from the manufacturer and distributor, Dr. Duff filed the third-party complaint that is the subject of the instant appeal against the manufacturer and distributor of the phentermine used by Mrs. Wilkinson.[2]

The crux of Dr. Duff's lawsuit against the manufacturer and distributor is that if he had received proper warnings about the hazards of prescribing phentermine to postpartum and breast feeding women, he would have presented those hazards to Mrs. Wilkinson in the oral and written information he provided, and would have altered the questions contained in his medical history so that Mrs. Wilkinson would have given this information to Dr. Duff.[3]

However, during discovery, Dr. Duff introduced no evidence or witnesses regarding whether the product manufactured by the third-party defendants was unsafe for its intended use and/or failed to contain a required warning. Instead, Dr. Duff contended that he intended to rely upon Mr. Wilkinson's evidence that phentermine caused or contributed to Mrs. Wilkinson's death—in other words, if the plaintiff proved to a jury that Mrs. Wilkinson took phentermine in accordance with Dr. Duff's instructions, and that dosage caused or contributed to her death, then Dr. Duff would rely on the plaintiff's evidence to show that the manufacturer and distributor of the phentermine were also liable. However, none of Mr. Wilkinson's witnesses opined that the labels or warning inserts provided by the manufacturer and distributor were insufficient or otherwise defective.

Furthermore, during discovery Dr. Duff admitted that he does not accept patients who are less than three months postpartum, and admitted that it would be a violation of a doctor's standard of care to prescribe phentermine to a patient who was postpartum and/or breast feeding. He asserted that had Mrs. Wilkinson volunteered that she had given birth to a child approximately seven weeks previously, he would not have dispensed phentermine to her.

Appellees Eon Labs and Calvin Scott & Company subsequently filed motions for summary judgment as to the third-party complaint arguing, *inter alia*, that Dr. Duff had failed to establish a duty to warn of a heightened risk of an adverse effect from phentermine by women who were postpartum or breast feeding, and had failed to establish that the alleged failure to warn was a proximate cause of injury to the plaintiff's decedent.

On July 5, 2001, the circuit court entered an order granting both appellees' motions, finding that Dr. Duff had failed to present sufficient evidence to create a genuine issue of material fact that the appellees had a duty to warn under West Virginia law. Additionally, the circuit court concluded that Dr. Duff had failed to show that any alleged failure to warn was a cause of Mrs. Wilkinson's death, because Dr. Duff had admitted that even in the absence of a warning he never would have prescribed phentermine to a postpartum or breast feeding patient.

---

**2.** A defendant's right to exercise the right to contribution from other tortfeasors exists "to moderate the inequity which existed in our law that enabled the plaintiff to cast the entire responsibility for an accident on one of several joint tortfeasors by deciding to sue only him." *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 344, 256 S.E.2d 879, 886 (1979). However, we have held that a defendant must exercise the right to contribution in the underlying action, and may not delay the exercising of the right. As we stated, in Syllabus Point 5 of *Howell v. Luckey*, 205 W.Va. 445, 518 S.E.2d 873 (1999):

A defendant may not pursue a separate cause of action against a joint tortfeasor for contribution after judgment has been rendered in the underlying case, when that joint tortfeasor was not a party in the underlying case and the defendant did not file a third-party claim

pursuant to Rule 14(a) of the West Virginia Rules of Civil Procedure.

On this basis, Dr. Duff and Bariatrics, Inc., initiated a third-party complaint against the manufacturer and distributor of the phentermine used by Mrs. Wilkinson.

**3.** Dr. Duff repeatedly asserts in his brief that Mrs. Wilkinson is largely at fault for her injuries, because she failed to volunteer critical medical information. Mr. Wilkinson, however, disputes whether Mrs. Wilkinson owed any duty to Dr. Duff to "be clairvoyant," and volunteer medical information that Dr. Duff did not deem important enough to directly solicit through questioning. We do not consider these conflicting positions in our opinion.

Dr. Duff now appeals the circuit court's order granting summary judgment to third-party defendants Eon Labs and Calvin Scott & Company.

## II.

We review a circuit court's order granting summary judgment *de novo.* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," that is, the appellant. *Painter v. Peavy,* 192 W.Va. at 192, 451 S.E.2d at 758.

The appellant, Dr. Duff, contends that the circuit court erred in granting summary judgment because genuine issues of material fact exist regarding whether the phentermine was defective due to a lack of proper labels and warnings, and whether that lack of proper labels and warnings was a proximate cause of Mrs. Wilkinson's death.

We begin our analysis of these questions with an overview of our law regarding product liability actions. We first recognized a strict liability cause of action for defective products in *Morningstar v. Black and Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979). In a strict liability action, "the initial inquiry, in order to fix liability on the manufacturer, focuses on the nature of the defect and whether the defect was the proximate cause of plaintiff's injury." 162 W.Va. at 888, 253 S.E.2d at 682.

We held in Syllabus Point 3 of *Morningstar* that a strict liability cause of action is "designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion during the manufacturing process and to permit proof of the defective condition of the product as the prin-cipal basis of liability." The general test of whether a product is defective was established in Syllabus Point 4, where we held:

> In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.

In Morningstar, we stated that "a defective product may fall into three broad, and not mutually exclusive, categories: design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the adequacy of, warnings, instructions, and labels." 162 W.Va. at 888, 253 S.E.2d at 682.

The appellant, Dr. Duff, asserts that this is a "use defectiveness" or "failure to warn" case that implicates the adequacy of the instructions on the phentermine labels and warning inserts. We stated in *Morningstar* that in failure to warn cases, "the focus is not so much on a flawed physical condition of the product, as on its unsafeness arising out of the failure to adequately label, instruct or warn." 162 W.Va. at 888, 253 S.E.2d at 682. A failure to warn cause of action "covers situations when a product may be safe as designed and manufactured, but which becomes defective because of the failure to warn of dangers which may be present when the product is used in a particular manner." Syllabus Point 2, *Ilosky v. Michelin Tire Corp.,* 172 W.Va. 435, 307 S.E.2d 603 (1983).

In ascertaining whether a duty to warn exists, the fundamental inquiry is whether it was reasonably foreseeable that the product would be unreasonably dangerous if distributed without a particular warning. "For the duty to warn to exist, the use of the product must be foreseeable to the manufacturer or seller." Syllabus Point 3, *Ilosky v. Michelin Tire Corp., supra.*

Dr. Duff argues that the evidence of record raises a question of fact regarding whether the manufacturer and distributor of the phentermine adequately labeled the product or warned of potential hazards if the

product were used by postpartum or breast feeding women. We disagree. In the instant case, Dr. Duff presented absolutely no evidence of whether it was foreseeable to Eon Labs or Calvin Scott & Company that use of phentermine by women such as Mrs. Wilkinson could cause spontaneous coronary artery dissection. Dr. Duff also did not present any evidence as to the adequacy or inadequacy of the labels and warning inserts provided by the manufacturer and distributor, and did not present any evidence of what a proper label or warning insert should contain.

Additionally, Mr. Wilkinson presented absolutely no evidence that Mrs. Wilkinson's use of phentermine was a hazard foreseeable to the manufacturer and distributor. The record suggests that Mr. Wilkinson intends to introduce evidence focused solely on the standard of care of a weight loss physician toward a postpartum or breast feeding patient. Mr. Wilkinson's evidence contains no suggestions as to the proper standard of care for a manufacturer or distributor of phentermine—hence, its lack of utility in supporting Dr. Duff's claims. Therefore, Dr. Duff cannot avoid his own failure to produce evidence and claim reliance upon Mr. Wilkinson's evidence to establish a duty to warn by the manufacturer and distributor.

Furthermore, Dr. Duff argues that the manufacturer's and distributor's failure to warn of the drug's hazards proximately caused Mrs. Wilkinson's death, because Dr. Duff patterned his oral and written warnings and the medical history form completed by Mrs. Wilkinson after the labels and warning inserts provided by the manufacturer and distributor.[4] Dr. Duff argues that, had the appellees warned of a heightened risk of adverse reactions by women in the postpartum or breast feeding periods, Dr. Duff would have tailored his medical history form to obtain that information and fashioned his oral and written warnings to warn his patients of the risk.

However, the appellees point out that Dr. Duff admitted that—irrespective of any labels or warnings—he simply does not accept patients who are less than three months postpartum.[5] Dr. Duff admitted it would be a violation of the standard of care for a doctor to prescribe phentermine to a patient who was postpartum and/or breast feeding, as was Mrs. Wilkinson. Furthermore, Dr. Duff stated he would not have dispensed phentermine to Mrs. Wilkinson had he known, or had Mrs. Wilkinson informed him, that she was approximately seven weeks postpartum.

■■■ " 'Proximate cause' must be understood to be that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." Syllabus Point 3, *Webb v. Sessler,* 135 W.Va. 341, 63 S.E.2d 65 (1950). "The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred." Syllabus Point 5, *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds, State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983).

Dr. Duff made plain in his own deposition testimony that the content and form of the labels provided by the manufacturer and distributor did not motivate his dispensing of phentermine to Mrs. Wilkinson. Irrespective of the actions of the manufacturer and distributor, Dr. Duff stated that he would not have prescribed the drug had he known Mrs. Wilkinson was only seven weeks postpartum. We therefore cannot, on this record, say that the alleged actions or inactions of Eon Labs and Calvin Scott & Company produced the wrong complained of, and were in any way a proximate cause of Mrs. Wilkinson's death.

To be clear, we believe that Dr. Duff raised novel issues of law by filing his third-party product defect complaint against the manufacturer and distributor of phenter-

---

4. We note that Dr. Duff has not supplied any evidence—such as an affidavit—to support this argument. The record suggests that Dr. Duff reviewed the phentermine labels and warnings only once or twice a year; it is therefore entirely speculative how long it would have taken him to detect an additional warning in the labeling and alter his materials.

5. Dr. Duff indicated that women naturally lose most of the weight gained during pregnancy in the three month postpartum period, and weight-loss medication is therefore inappropriate.

mine. Dr. Duff, however, contending that there is nothing wrong with phentermine and that the drug did not contribute to Mrs. Wilkinson's death, chose to not introduce evidence regarding any alleged defect, but instead chose to rely upon the plaintiff-below's evidence. Unfortunately, the plaintiff-below's evidence focused on the duties, and alleged breach thereof, of Dr. Duff, and not on the dangerousness of phentermine due to inadequate labeling by the manufacturer and distributor.

After careful examination of the record, we find no genuine issue of fact that Eon Labs and Calvin Scott & Company had a duty to warn of any hazards regarding the use of phentermine by postpartum or breast feeding women. Furthermore, we find no genuine issue of fact that any failure by Eon Labs or Calvin Scott & Company to include warnings was a proximate cause of Mrs. Wilkinson's death. The circuit court was therefore correct in granting summary judgment to these third-party defendants.

### III.

Accordingly, the circuit court's July 5, 2001 order is affirmed.

Affirmed.

McGRAW, Justice, dissenting.

(Filed Dec. 11, 2002)

This is a tragic case in which it appears several factors could have contributed to the untimely passing of the decedent. Dr. Duff argued that had the manufacturer specifically informed him of the hazards of prescribing phentermine to women who had recently given birth, he would have made certain to determine the childbearing status of all his patients before prescribing the drug. He also argues that even if he somehow prescribed the drug to a post-partum woman such as Mrs. Wilkinson, that at a minimum he would have passed on any such written warnings, which then might still have prevented her from taking the drug.

While a doctor must be aware of the latest available information about any drug he or she prescribes, a doctor is not in the business of producing drugs, or testing their safety or efficacy. A pharmaceutical company is in that business, and has the resources to conduct studies and gather research on every drug it produces. Because of the outcome of this case, a jury will not have the opportunity to consider if the manufacturer possessed information about the drug that it should have passed on to practitioners like Dr. Duff.

Often it is the malpractice plaintiff that appears before this Court and asks that a lower court's grant of summary judgment be overturned so that a jury might decide the case. However, in this case, it is Dr. Duff who has had his case against the drug manufacturer foreclosed by summary judgment. Doctors should get the same fair treatment as any other party, and in this case, I believe it would be fair for Dr. Duff to be able to present his case against the manufacturer to a jury.

Therefore, I respectfully dissent.