584 S.E.2d 203

**STATE of West Virginia ex rel. Albert LEUNG, M.D., Petitioner,**

v.

**Honorable David H. SANDERS, Judge of the Circuit Court of Berkeley County, and Christel Y. Schell, Respondents.**

No. 31319.

Supreme Court of Appeals of West Virginia.

Submitted June 17, 2003.

Decided July 2, 2003.

Dissenting Opinion of Justice McGraw July 3, 2003.

Concurring and Dissenting Opinion of Justice Albright July 7, 2003.

Syl. pt. 4, *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.*, 206 W.Va. 691, 527 S.E.2d 802 (1999).

572

David Z. Myerberg, Esq., Charles J. Crooks, Esq., Jackson & Kelly, PLLC, Morgantown, for the Petitioner.

D. Michael Burke, Esq., Burke, Schultz, Harman & Jenkinson, Martinsburg, Barry J. Nace, Esq., Paulson & Nace, Washington, DC, for the Respondents.

PER CURIAM.

Albert Leung, M.D. (hereinafter "Dr. Leung"), seeks an original jurisdiction writ of prohibition to prevent the respondent Judge, the Honorable David H. Sanders, Judge of the Circuit Court of Berkeley County (hereinafter "the circuit court"), from enforcing an order denying Dr. Leung leave to file a third-party complaint in the underlying medical malpractice action. Having reviewed the petition for prohibition and the supporting memorandum of law, the response, and all the accompanying exhibits, we find the circuit court exceeded its legitimate powers by

committing clear legal error. Consequently, we grant the writ as moulded.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On February 22, 2002, respondent Christel Y. Schell (hereinafter "Ms. Schell") filed a medical malpractice complaint against, among a number of other individuals, Dr. Leung. On August 5, 2002, the circuit court entered a scheduling order. The scheduling order failed to set forth a time limit to join other parties. The order did, however, provide for a May 20, 2003, trial date; a discovery deadline of February 20, 2003; and witness disclosures by March 20, 2003, for Ms. Schell and by April 20, 2003, for the defendants.

On or about March 21, 2003, Dr. Leung filed a motion for leave to file a third-party complaint against Dr. Wanger and Shenandoah Valley Medical Systems, Inc. (hereinafter "Shenandoah").[1] This third-party complaint alleged that Dr. Wanger was an employee of Shenandoah and that Drs. Leung and Wanger had an agreement whereby Dr. Wanger would provide medical care to Dr. Leung's patients when Dr. Leung was unavailable. The complaint also alleged that Dr. Wanger saw Ms. Schell in Dr. Leung's absence and provided medical care to her, which included testing and diagnosis upon which Dr. Leung relied in subsequently treating Ms. Schell. Dr. Leung further alleged that if he would be found liable, then all or some of the liability would be the result of Dr. Wanger and/or Shenandoah's negligence. Thus, Dr. Leung sought to make Dr. Wanger and Shenandoah third-party defendants for indemnification and/or contribution.

The parties before this Court agree that at the time Dr. Leung filed his motion for leave to bring in Dr. Wanger and Shenandoah, discovery was not yet complete. According to Dr. Leung, he had yet to take Ms. Schell's deposition, and Ms. Schell confirms that the

1. Although Ms. Schell's complaint acknowledged treatment by Dr. Wanger and Shenandoah, Ms. Schell did not sue either Dr. Wanger or Shenandoah. Apparently, Shenandoah is a federal medical clinic, and Ms. Schell did not wish to implicate federal jurisdiction in this case.

deposition was continued at least once prior to the discovery deadline. Further, several of the expert witnesses in the case had not been deposed at the time of Dr. Leung's motion.

The circuit court refused permission to file the third-party complaint by order entered April 25, 2003. In denying the motion, the circuit court found: (1) the filing of the motion barely two months before the trial date was untimely and prejudicial to Ms. Schell; (2) the third-party complaint failed to contain any allegations of negligence or basis of liability against Dr. Wanger so that leave to file could not properly be had; and, (3) Dr. Leung failed to comply with the screening requirements of the West Virginia Medical Professional Liability Act in that he failed to provide a screening certificate of merit. W. Va.Code § 55-7B-6(b) (2001) (Supp.2002). Dr. Leung then filed a petition for a writ of prohibition with this Court. We issued a rule to show cause on May 13, 2003.

## II.

## STANDARD FOR ISSUANCE OF WRIT OF PROHIBITION

 Pursuant to West Virginia Code § 53-1-1 (1923) (Repl.Vol.2000), "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." Dr. Leung does not dispute that the circuit court enjoyed jurisdiction over this case; rather, he contends that it exceeded its legitimate powers in declining to allow him to file his third-party complaint. The standard

in such a case is found in Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

## III.

## DISCUSSION

Dr. Leung finds fault with all three bases upon which the circuit court denied him permission to file his third-party complaint against Dr. Wanger and Shenandoah.[2] We find that the circuit court exceeded its legitimate powers in holding Dr. Leung's motion

---

**2.** The order entered by the circuit court denying Dr. Leung's motion only included Dr. Wanger, and did not mention Shenandoah. At oral argument, Ms. Schell's counsel, who prepared the order, stated that this was an error on his part and that a corrected order would be forthcoming. We think that a corrected order is warranted. However, we believe the current order before us must be read to include Shenandoah well as Dr. Wanger. Below, Dr. Leung's impleader motion and third-party complaint treated Dr. Wanger and Shenandoah identically, and in his petition for a writ of prohibition and memorandum of law, Dr. Leung treats the circuit court's refusal to file the third-party complaint as en-

compassing both Dr. Wanger and Shenandoah. Further, if the circuit court found that the motion was untimely as to Dr. Wanger, it is only logical to assume that the court found it untimely as to Shenandoah as well. Thus, we construe the order denying Dr. Leung's motion as denying him permission to implead both Dr. Wanger and Shenandoah. *See* 46 Am.Jur.2d *Judgments* § 100, at 454 (1994) ("If there is any uncertainty in the judgment as to the party for or against whom it is rendered, such uncertainty may be removed, and the validity of the judgment upheld, by resort to the entire record, including the pleadings and process, where such identity may be ascertained." (footnote omitted)).

untimely and in finding that Dr. Leung's proposed third-party complaint against Dr. Wanger and Shenandoah was inadequate. We further conclude that Ms. Schell lacked standing to invoke the certificate of merit requirement contained in the West Virginia Medical Professional Liability Act, W. Va. Code § 55–7B–6(b) (2001) (2002 Supp.) on behalf of Dr. Wanger and Shenandoah. Thus, we grant the writ as moulded.

### A. Timeliness of Motion.

In the absence of a scheduling order containing a deadline to join additional parties as required by Rule 16 of the West Virginia Rules of Civil Procedure, the timeliness of a motion to file a third-party complaint is analyzed under Rule 14 of the West Virginia Rules of Civil Procedure. West Virginia Rule of Civil Procedure 16(b)(1) provides, in pertinent part, that "[e]xcept in actions exempted by the Supreme Court of Appeals," a circuit court "shall after consulting with the attorneys for the parties . . . enter a scheduling order that limits the time: To join other parties and to amend the pleadings . . . ." Thus, Rule 16(b) directs that, "[a]s long as the case is not exempted . . . the court must issue a written scheduling order . . . ." Fed.R.Civ.P. 16 advisory committee's note (1983 amendment).[3] In other words, "[u]nder Rule 16(b)(1) it is mandatory that a scheduling order fix dates for joining other parties and to amend the pleadings." Franklin D. Cleckley et al., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 16(b)(1)[2], at 357 (2002). Notwithstanding that Rule 16(b)(1) is mandatory, the scheduling order lacked a deadline for adding parties.

Because of the scheduling order's failure to include a cut-off date to add additional parties, Dr. Leung asserts he "did not violate a deadline for filing his motion for leave. Accordingly, [his] motion for leave to file a third-party complaint must be viewed as timely submitted and thus, granted." We disagree with this characterization.

The scheduling order in this case simply did not contain a deadline for joining other parties. In such a circumstance, we cannot ignore the obvious and indulge in the fiction that a deadline was set; rather, we must take the facts as they actually existed and proceed upon the recognition that no Rule 16(b)(1) deadline governing the joining of additional parties was included in the scheduling order in this case.[4] Thus, we think that the proper approach is to examine the issue under West Virginia Rule of Civil Procedure 14, the Rule that "lays out the guidelines under which defendants and plaintiffs may bring third parties into the action." Cleckley, *supra*, § 14[1], at 323. *Cf. Campania Mgt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 n. 1 (7th Cir.2002) ("In the absence of such an order [delineating a deadline for amending the pleadings], we shall analyze this particular issue under the rubric of Rule 15 [the rule of civil procedure governing the amending of pleadings].").[5]

Rule 14(a) of the West Virginia Rules of Civil Procedure provides, in pertinent part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party

3. We have noted that "[b]ecause the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules." *Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 20 n. 13, 537 S.E.2d 632, 641 n. 13 (2000).

4. Because the scheduling order in this case did not include a deadline to join third parties, our opinion has no reason to address the interrelationship between Rules 14 and 16 in the context of a scheduling order that contains a Rule 16(b)(1) deadline. *See In re CFS–Related Securities Fraud Litig.*, 213 F.R.D. 435, 437 n. 2

(N.D.Okla.2003) (refusing to address the issue of whether a third-party complaint filed after Rule 14(a)'s ten day window closes, but within the scheduling order's deadline for joinder of parties, requires permission of the trial court).

5. Like the Seventh Circuit, we admonish all circuit courts that they must "faithfully follow the strictures of Rule 16(b) in future cases." *Campania Mgt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848 n. 1 (7th Cir.2002). If the Rule is followed, we do not believe the situation currently before us will be repeated.

plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.

In short, Rule 14(a) provides that before a third-party may be impleaded[6] by a first-party defendant, a first-party defendant must file a motion for leave to bring in a third-party defendant, unless the motion is made within ten days of service of the moving party's answer. Thus, the Rule maintains a screening function for circuit courts with regard to motions to implead that are filed after the close of this ten-day window. Fed. R.Civ.P. 14 advisory committee's note (1963 amendment) ("The amended subdivision preserves the value of a preliminary screening, through the leave procedure, of impleaders attempted after the 10–day period.").

■ In this case, it is undisputed that Dr. Leung's motion for leave to file came more than ten days after the original answer had been served.[7] Thus, he was obligated to seek leave of the circuit court to file the third-party complaint, for "[i]f a defendant wishes to implead after ten days of service of his/her answer, leave of court is necessary." Cleckley, *supra*, § 14(a)[2][a], at 327. " 'The provisions for impleader under Rule 14(a), West Virginia Rules of Civil Procedure, . . . are within the sound discretion of the trial court . . . .' Syl. Pt. 5, in part, *Bluefield Sash & Door Co., Inc. v. Corte Constr. Co.,* 158 W.Va. 802, 216 S.E.2d 216 (1975), *overruled on other grounds, Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1977)." Syl. pt. 5, in part, *Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990). Therefore, the question before us is whether the circuit court abused its discretion in finding Dr. Leung's motion for leave to bring a third-party complaint against Dr. Wanger and Shenandoah to be untimely.

■ " 'In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them.' " *State v. Hedrick,* 204 W.Va. 547, 553, 514 S.E.2d 397, 403 (1999) (quoting *Gentry v. Mangum,* 195 W.Va. 512, 520 n. 6, 466 S.E.2d 171, 179 n. 6 (1995)). While this is an accepting standard, "[w]e have also cautioned, however, that we will not simply rubber stamp the trial court's decision when reviewing for an abuse of discretion." *Id.,* 204 W.Va. at 553, 514 S.E.2d at 403. With this understanding, we turn to the facts of the case before us.

■ Normally, a "party must not be dilatory in proceeding . . . after a basis for impleader becomes clear." 3 *Moore's Federal Practice* § 14.21[3], at 14–58 (3d ed.2003). "Ideally, of course, motions for leave to implead a third party under Rule 14 should be made promptly or 'as soon as possible after the filings of the pleadings in the suit.' " 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1454, at 423 (2003) (footnote omitted). However, we agree with Dr. Leung that some delay in third-party practice may be inevitable and that "there is usually nothing talismanic about delay alone." 3 *Moore's Federal Practice* § 14.21[3], at 14–57. Instead, courts must examine if the reason for the delay is excusable and analyze any resulting prejudice. *Id.* We do so now.

■ The circuit court found Dr. Leung's motion untimely by relying on *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 597, 396 S.E.2d 766, 778 (1990), where we found "[u]nder the facts of [that] case, . . . no abuse of the trial court's discretion in its decision to deny appellant's motion for a third-party action." We explained that, "[t]he appellant's unexplained delay in filing the motion until shortly prior to trial would have prejudiced the plaintiff had it been granted." *Id.,* 183 W.Va. at 597, 396 S.E.2d

---

**6.** Third-party practice under Rule 14 is generally called impleader. 3 *Moore's Federal Practice* § 14.02, at 14–10 (3d ed.2003).

**7.** Dr. Leung served his answer on March 26, 2002, and his impleader motion on March 21, 2003.

at 778. However, under the facts of the instant case, we do not think that granting the impleader motion would have resulted in such significant delay to the case or prejudice to Ms. Schell or Dr. Wanger and Shenandoah as to justify the circuit court from precluding Dr. Leung from impleading Dr. Wanger and Shenandoah.

At the time Dr. Leung filed his impleader motion, discovery in this case was evidently far from complete. Neither Ms. Schell nor several expert witnesses in this case had been deposed. Thus, putting aside Dr. Leung's motion for impleader, we find it difficult to fathom how this case could have been ready for trial on May 20, 2003. It is apparent, therefore, that the trial date in this case would have had to be moved notwithstanding the impleader motion. Thus, we cannot attribute any significant delay in this case as flowing from the impleader motion. We conclude that the circuit court failed to consider this material fact in denying leave to implead and, thus, abused its discretion.[8]

### B. *Allegations of Negligence Against Dr. Wanger and Shenandoah*

■ In denying the motion for leave to file, the circuit court additionally found that "the putative third party complaint fails to contain any allegations of negligence or other basis of liability against Dr. Wanger of any sort. It is thus not even a complaint. Leave to file it, therefore, may not properly be had

under Rule 14." We think this conclusion constitutes clear legal error.

■ Rule 14 "preserves the value of a preliminary screening, through the leave procedure, of impleaders attempted after the 10–day period." Fed.R.Civ.P. 14 advisory committee's note (1963 amendment). A circuit court enjoys the discretion to strike a third-party claim, *inter alia,* "if it is obviously unmeritorious . . . ." *Id.* To determine if the complaint is "obviously unmeritorious," we must examine West Virginia Rule of Civil Procedure 8(a), which "sets out general guidelines for pleading claims and defenses." Cleckley, *supra,* § 8[1], at 184.

■ Rule 8(a) provides, in pertinent part, "[a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." "Rule 8(a) sets forth the pleading standard for all pleadings seeking affirmative relief[,]" and "applies not only to an original claim contained in a complaint, but also to a pleading containing a claim for relief that takes the form of a . . . third-party claim." Wright, *supra,* § 1205, at 86 (footnote omitted).[9] Rule 8(a) is, therefore, applicable to Dr. Leung's proposed third-party complaint.

---

8. We do not condone, however, waiting until the eve of trial to bring an impleader motion. Dr. Leung was aware from his receipt of Ms. Schell's complaint of Dr. Wanger's and Shenandoah's participation in Ms. Schell's treatment. Indeed, Dr. Leung's counsel admitted to this Court that he was contemplating impleading Dr. Wanger and Shenandoah as early as September 2002. Instead, though, counsel waited to file the impleader motion because Dr. Leung wished to settle this case without impleading Dr. Wanger and Shenandoah and hazarding his ten-year relationship with Dr. Wanger. We caution that " '[h]e meant well' has served as an epitaph for many a futile endeavor, many a lost cause." *South Iowa Methodist Homes, Inc. v. Board of Rev.,* 257 Iowa 1302, 1312, 136 N.W.2d 488, 494 (1965) (Garfield, C.J., dissenting). We doubt that Dr. Leung's concern for Dr. Wanger would justify his delay in filing his impleader motion. If this case would not otherwise have had to be continued, we would be hard pressed to find Dr. Leung's impleader motion timely when it was

served only two months before trial and justified by Dr. Leung's concern for Dr. Wanger. *See Valley Indus. Inc. v. Martin,* 733 S.W.2d 720, 721 (Tex.Ct.App.1987) ("Inasmuch as joinder of a new party 60 days before trial will almost certainly delay trial, the trial court could properly have denied Valley leave to implead . . . ."); *See also Wilkinson v. Duff,* 212 W.Va. 725, 729 n. 2, 575 S.E.2d 335, 339 n. 2 (2002) (per curiam) ("[W]e have held that a defendant must exercise the right to contribution in the underlying action, and may not delay the exercising of the right.");

9. Federal Rule of Civil Procedure 8(a) includes one additional requirement in a pleading: a specific basis for invocation of federal jurisdiction. The obligation of a party to affirmatively set forth federal jurisdiction is premised upon the fact that federal courts are courts of limited jurisdiction whose jurisdiction will not be presumed. *See e.g., Dracos v. Hellenic Lines, Ltd.,* 762 F.2d 348, 350 (4th Cir.1985).

As compared to the old common law pleading, "[t]he West Virginia Rules of Civil Procedure have considerably liberalized the rules of pleading as respects stating a claim ... in a civil action." *M.W. Kellogg Co. v. Concrete Accessories Corp.*, 157 W.Va. 763, 772, 204 S.E.2d 61, 67 (1974). Now,

> [a]ll that the pleader is required to do under Rule 8(a) is set forth sufficient information to outline the elements of his/her claim or to permit inferences to be drawn that these elements exist. Rule 8(a) contemplates a succinct complaint containing a plain statement of the nature of the claim together with a demand for judgment.

*Id.*[10]

■ Dr. Leung's proposed third-party complaint set forth the factual background to his claim, including allegations that (1) Shenandoah employed Dr. Wanger; (2) Dr. Leung and Dr. Wanger had an agreement where Dr. Wanger would cover for Dr. Leung if Leung was unavailable; (3) Dr. Wanger treated Ms. Schell at Shenandoah because Dr. Leung was on vacation; (4) Dr. Wanger's treatment of Ms. Schell included performing tests and diagnosing her with endometriosis; (5) Dr. Wanger referred Ms. Schell to Dr. Leung for follow-up care; and (5) upon his return, Dr. Leung based his treatment of Ms. Schell, in part, upon the testing and diagnosis performed by Dr. Wanger. Dr. Leung's third-party complaint proceeded to assert that if Dr. Leung was found liable to Ms. Schell "then some or all of his liability would be the result of Dr. Wanger's and Shenandoah's negligence." Dr. Leung's proposed third-party complaint against Dr. Wanger

and Shenandoah also demanded relief in the form of "contribution and/or indemnification" for some or all of any damages to which Dr. Leung might be subjected as a result of Ms. Schell's complaint.[11]

We think it evident that Dr. Leung's third-party complaint satisfies Rule 8(a)'s minimal pleading requirements. Specifically, and contrary to the circuit court's conclusion that it "fails to contain any allegations of negligence," Dr. Leung's proposed third-party complaint contains an allegation that any liability found against Dr. Leung would be *"the result of Dr. Wanger's and Shenandoah's negligence."* (Emphasis added). Any additional information that the parties need is to be gathered from the " 'liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.' " *Sticklen v. Kittle*, 168 W.Va. 147, 163, 287 S.E.2d 148, 157 (1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 85–86 (1957)(footnote omitted)).

Because Dr. Leung's proposed third-party complaint met the minimal requirements of Rule 8(a), it cannot be "obviously unmeritorious" as required for refusal to file under Rule 14(a). Consequently, we find the circuit court committed clear legal error in finding Dr. Leung's third-party complaint insufficient.

### C. Certificate of Merit.

■ As the final basis for denying Dr. Leung's motion to implead Dr. Wanger and

---

10. We note that the liberal thrust of Rule 8 may be limited by other rules, as well as by statutory and case law. Cleckley, *supra*, § 8[2], at 185.

11. At oral argument, Dr. Leung's counsel clarified that he sought only contribution. As we explained in Syllabus point 2 of *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990), "[a] defendant in a civil action has a right in advance of judgment to join a joint tortfeasor based on a cause of action for contribution. This is termed an 'inchoate right to contribution' in order to distinguish it from the statutory right of contribution after a joint judgment conferred by W. Va.Code, 55–7–13 (1923)." " 'The touchstone of the right of inchoate contribution is this inquiry: Did the party against whom contribution is

sought breach a duty to the plaintiff which caused or contributed to the plaintiff's damages?' " *Sheetz, Inc. v. Bowles, Rice, McDavid, Graff & Love, PLLC*, 209 W.Va. 318, 329, 547 S.E.2d 256, 267 (2001) (quoting *Zando*, 182 W.Va. at 603, 390 S.E.2d at 802). *See also* Syl. pt. 3, *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 289 S.E.2d 679 (1982) ("As between joint tortfeasors, a right of comparative contribution exists *inter se* based upon their relative degrees of primary fault or negligence.") Consequently, Dr. Leung's right to contribution from Dr. Wanger and Shenandoah rests upon Dr. Leung being able to prove that at least some of Ms. Schell's injuries were attributable to Dr. Wanger and Shenandoah.

Shenandoah, the circuit court found that Dr. Leung's proposed third-party complaint "failed to comply with the screening certificate of merit requirement of the West Virginia Medical Professional Liability Act, W. Va.Code § 55–7B–6(a) to 6(b) (2003)." [12] We believe the circuit court committed a clear error of law in allowing Ms. Schell to assert any rights Dr. Wanger and Shenandoah may have under the Medical Professional Liability Act (hereinafter the "MPLA") since she lacked standing to assert rights belonging to these third-parties. [13]

 "Generally, standing is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (quoting *Black's Law Dictionary* 1413 (7th ed.1999)). "'Our standing inquiry focuses on the appropriateness of a party bringing the questioned controversy to the court.'" *Id.,* 213 W.Va. at 95, 576 S.E.2d at 822 (quoting *Louisiana Envtl. Action Network v. Browner,* 87 F.3d 1379, 1382 (D.C.Cir.1996)). One specific aspect of standing is that one generally lacks standing to assert the rights of another. We now turn to explore this aspect of standing.

 We previously have recognized the reticence courts have in allowing parties to attempt to vindicate the rights of third-parties:

> [t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case.

*Snyder v. Callaghan,* 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted). In *Kessel v. Leavitt,* 204 W.Va. 95, 118, 511 S.E.2d 720, 743 (1998) (quoting *Warth v. Seldin,* 422 U.S. 490, 509, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343, 361 (1975)), we recognized the "specific 'prudential standing rule that normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves[,]'" and held that one defendant lacked standing to raise a co-defendant's objection to the circuit court's exercise of personal jurisdiction over the co-defendant. In light of our clear and long-standing precedent against third-party standing, the circuit court committed clear legal error in permitting Ms. Schell to litigate Dr. Wanger's and Shenandoah's potential rights. [14] Thus, we grant the

---

**12.** West Virginia Code § 55–7B–6 was amended by H.B. 2122, 2003 W. Va. Acts Ch. 147, in the 2003 regular legislative session. H.B. 2122 made several changes to the MPLA's pre-filing requirements, but left intact the certificate of merit requirement. Thus, under West Virginia Code § 55–7B–6(b) (2001) (Supp.2002):

> The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) the expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding.

**13.** We do not express any opinion on the substantive question of whether Dr. Leung needed to comply with the certificate of merit requirement in the MPLA. Should they choose to do so, Dr. Wanger and Shenandoah may raise this issue below and respond to Dr. Leung's other arguments, which we do not reach here, as to why he did not have to comply with the certificate of merit requirement.

**14.** We recognize that in many applications the rules of prudential standing are not constitutionally mandated, but they are "weighty" "'rule[s] of practice'" and should be abandoned only in response to "weighty countervailing policies." *United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524, 530 (1960) (citation omitted). *See also DePriest v. Virginia,* 33 Va. App. 754, 762, 537 S.E.2d 1, 4 (2000) (citation omitted) (noting that prudential standing rules are subject to "'limited exceptions'" justified by only by the "most 'weighty, countervailing policies.'").

writ as moulded.[15]

## IV.

## CONCLUSION

For the foregoing reasons, the writ of prohibition is granted.

Writ granted as moulded.

McGRAW, J., dissenting.

(Filed July 3, 2003)

Though the facts alleged in the proposed third-party complaint have been known to Dr. Leung since the underlying medical malpractice action was first commenced more than one year ago, Dr. Leung did not seek to institute a third-party action against Dr. Wanger and Shenandoah Valley Medical Systems until two months before the scheduled trial date. In my view, Dr. Leung's professed explanation for this delay—that he did not wish to jeopardize his professional relationship with Dr. Wanger—is not a sufficient justification for significantly delaying the plaintiff's right to a jury trial, particularly in light of the plaintiff's representation during oral argument that she was prepared to proceed to trial as scheduled. Because I believe the majority's holding operates to assist Dr. Leung in his seemingly calculated effort to impede the final resolution of this case, I respectfully dissent.

ALBRIGHT, Justice, concurring in part, dissenting in part.

(Filed July 7, 2003)

While I concur with the majority opinion as to the reasons cited for issuing the writ of prohibition that pertain to the timeliness of the third-party complaint and the presence of averments grounded in negligence contained within the third-party complaint, I must dissent from the majority's conclusion that the lower court violated established rules of standing in ruling on the issue of whether the screening requirements of the West Virginia Medical Professional Liability Act[1] (hereinafter referred to as the "Act") had been met in conjunction with the filing of the third-party complaint.[2]

Rather than addressing the substantive issue presented by this case concerning the applicability of the prerequisites for filing an action under the Act to third-party impleader motions, the majority opted to dispense with the properly raised issue by citing principles of standing that arguably do not apply to the procedural circumstances of this case. In so doing, the majority merely postpones for yet another appeal the issue which is squarely presented by this case.

As support for grounding the issue on the plaintiff's lack of standing to assert non-compliance with the screening requirements of West Virginia Code § 55–7B–6, the majority relies upon generalized principles of standing that address the substantive right to bring a cause of action in the first instance or to seek enforcement of the rights of others.[3] None of the cases cited by the majority concerns the issue presented here: whether a plaintiff has a sufficient interest in the filing of a third-party complaint that would permit her to raise a procedural objection to the filing of the third-party complaint. *See* W.Va.R.Civ.P.14 (stating that "[a]ny party may move to strike the third-party claim").

By characterizing the rights involved as merely those of the third-party defendants

---

**15.** We do observe that West Virginia Rule of Civil Procedure 14 allows "[a]ny party [to] move to strike the third-party claim ...." However, we do not believe that this provision of Rule 14 extends to issues in the impleader motion or proposed third-party complaint that do not affect the rights of the party moving to strike such third-party claim.

**1.** *See* W.Va.Code § 55–7B–1 to –11 (1986 & Supp.2003).

**2.** *See* W.Va.Code § 55–7B–6.

**3.** While the majority relies upon the "prudential standing rule" which, in most circumstances, prevents a party from asserting the rights of others, "this rule may be relaxed in appropriate circumstances." C. Wright, A. Miller, E. Cooper, 13 *Federal Practice and Procedure* § 3531.9 at 542–43 (1984). Recognizing the "flexible approach" that is applied to this issue, the authors of this respected treatise summarize the same by stating that "the rule against asserting the rights of others is a prudential rule that can be relaxed when the purposes of standing doctrine are served." *Id.* at 543 and n. 2 and cases cited therein.

**580**

that Dr. Leung sought to implead (Drs. Wanger and Shenandoah), the majority takes an overly narrow view of the interests at stake with regard to the granting of Dr. Leung's motion for leave to file a third-party complaint. Certainly, Doctors Wanger and Shenandoah, upon the granting of the motion for a third-party complaint, could have raised non-compliance with the Act's screening requirements as an objection in their answer to the third-party complaint.[4] There is simply no basis, however, for the majority's conclusion that such objection belongs exclusively to the third-party defendants.

Courts have found that a plaintiff has standing to challenge the legal sufficiency of a third-party complaint. In *Malerba v. Cessna Aircraft Co.*, 210 Conn. 189, 554 A.2d 287 (1989), the Connecticut Supreme Court reasoned:

> "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue...." "[Standing is] ordinarily held to have been met when a complainant makes a colorable claim of direct injury he ... is likely to suffer...."
>
> The question then is whether the third party complaint and the parties it draws into the action create a risk of a direct injury to the original plaintiff. *Injury in this context includes procedural injury to the cause of action.*

*Id.* at 288–89 (citations omitted and emphasis supplied).

Looking to the rules of practice which permit a third-party defendant to assert any defenses the third-party plaintiff has against the plaintiff as well as asserting any claim against the plaintiff arising out of the transaction or occurrence which is the subject matter of the plaintiff's claim against the third-party plaintiff, the court in *Malerba* found significant the fact that a third-party defendant is "arm[ed] ... with the full panoply of procedural options available to address not only the claim of the third party plaintiff but also the claim of the original plaintiff against the original defendant." 554 A.2d at

289; see W.Va.R.Civ.P. 14. Based on the potential addition of two defendants through the third-party complaint, the Connecticut court concluded that the plaintiff in that action had established "a colorable claim of a likelihood of injury to [his] ... cause of action." 554 A.2d at 289; *see also Leisure Resort Technology, Inc. v. Trading Cove Assocs.*, 29 Conn.L.Rptr. 648, 2001 WL 746403 at *2 (Conn.Super.2001) (upholding plaintiff corporation's standing to challenge counterclaim filed by defendants against corporation's president in his individual capacity where corporate president did not join in motion finding that "counterclaim ... raises at least a colorable claim of a likelihood of injury to the plaintiff's cause of action similar to the 'procedural injury' recognized by the Supreme Court in *Malerba*"); *Tynon v. D.R. McClain & Son*, 131 Misc.2d 203, 499 N.Y.S.2d 354 (Sup.1986) (finding that plaintiff, as an adverse party to third-party defendant, had standing to challenge third-party defendant's motion for leave to serve amended answer to third-party complaint).

The majority wrongly concludes that the plaintiff in this case has no interest and, therefore, no standing to object to the filing of the third-party complaint. In their attempt to distinguish the unfettered right of "[a]ny party" to move to strike a third-party claim established under Rule 14 of the Rules of Civil Procedure, the majority suggests that this provision should not be considered as applicable unless the third-party complaint "affect[s] the rights of the party moving to strike such third-party claim." The majority suggests a limitation to Rule 14 that simply does not exist. Moreover, what the majority clearly overlooks is that the plaintiff in this case set forth grounds of both interest and alleged injury by asserting prejudice as a result of the last minute granting of the third-party complaint. A plaintiff clearly has an interest in the granting of an eleventh hour motion to implead.

In a case that more closely resembles this one from a procedural standpoint, the plaintiffs challenged the defendants' attempt to

---

**4.** We do not find it necessary to determine the applicability of the screening requirements set forth in West Virginia Code § 55–7B–6 for purposes of addressing this issue.

implead a third party for indemnification purposes. *See Lemp v. Town of East Granby,* 2000 WL 1912696 (Conn.Super.2000). While the defendants argued that the plaintiffs were without standing to address the issue of the city's decision to implead the dog's owners in a negligence case, the court stated: "This argument skirts the actual issue raised by the plaintiffs, which does not focus upon the merits of the proposed third-party complaint, *but upon the propriety of seeking the court's permission to submit such a complaint at this stage of the proceedings."* *Id.* at *1 (emphasis supplied). In finding in favor of the plaintiffs on the issue of standing, the Connecticut court looked to the clear authority provided by the impleader statute to object to such motions and the fact that "the plaintiffs have not challenged the merits or content of the proposed complaint." *Id.* at *2.

Like the plaintiffs in *Lemp,* the plaintiff in this case was challenging the filing of the third-party complaint based upon the last minute nature of such procedural request and the anticipated delays that would result to her original cause of action. Because this aspect of her challenge was based on the failure to comply with the screening requirements imposed under West Virginia Code § 55–7B–6, her objection was clearly procedural in nature. Having established that the plaintiff had a right to object to the filing of the third-party complaint under principles of standing and the rules of civil procedure, she was permitted to raise any objections to the propriety of filing the third-party complaint, which included non-compliance with the screening requirements of West Virginia Code § 55–7B–6. To dispense with this issue, as the majority does, by concluding that the plaintiff had no standing to raise a procedural issue involving the issue of impleader amounts, in my opinion, to a shirking of the Court's responsibility to address issues fairly raised.