599 S.E.2d 810

**WV DEPARTMENT OF HEALTH & HUMAN RESOURCES EMPLOYEES FEDERAL CREDIT UNION, Plaintiff Below, Appellee**

v.

**Cynthia TENNANT, Defendant Below, Appellant**

**No. 31506.**

Supreme Court of Appeals of West Virginia.

Submitted May 25, 2004.

Decided June 17, 2004.

Concurring Opinion of Justice Davis June 18, 2004.

Concurring and Dissenting Opinion of Justice Albright June 30, 2004.

Davis, J., concurred and filed opinion.

Albright, J., concurred in part, dissented in part, and filed opinion joined by Starcher, J.

Cynthia Tennant, Pro se, Fairview.

No appearance on behalf of Appellee.

PER CURIAM:

In the instant case, the appellee, the West Virginia Department of Health and Human Resources Employees Federal Credit Union ("Credit Union"), filed a complaint against the appellant, Cynthia Tennant, on August 1, 2000, in the Magistrate Court of Kanawha County, alleging that as a result of her delinquent debt, Ms. Tennant breached her agreement on a revolving MasterCard credit account. The Credit Union asserted that Ms. Tennant had an outstanding balance of $5,938.81; however, due to the limitations on the amount of relief that can be collected in magistrate court, the Credit Union requested judgment in its favor in the amount of $5,000.

On January 17, 2001, Ms. Tennant filed a motion to have her case removed to circuit court. Thereafter, on December 2, 2002, a trial was held in the Circuit Court of Kanawha County. On December 5, 2002, the circuit court entered an order against Ms. Tennant and in favor of the Credit Union in the amount of $5,811.02, plus post-judgment interests and court costs. Ms. Tennant now appeals the circuit court's order. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court affirms the decision of the circuit court.

## I.

### *FACTS*

Cynthia Tennant, the appellant, is an employee of the West Virginia Department of Health and Human Resources ("DHHR") and lives in Fairview, West Virginia.[1] On June 2, 1997, Ms. Tennant applied for a MasterCard credit account through the appellee, the West Virginia Department of Health and Human Resources Employees Federal Credit Union ("Credit Union"). Within a few days of being approved and actually receiving her MasterCard, Ms. Tennant requested that her $1,500 credit limit be increased. On June 19, 1997, Ms. Tennant's request for an increase was approved and her credit limit was increased to $3,000. Then, on August 2, 1997, Ms. Tennant requested and was approved for an increase in her credit limit to $4,000. On September 4, 1997, Ms. Tennant applied for and received another increase to her credit limit to $5,000.

Approximately one year later, on October 30, 1998, Ms. Tennant was sent a "notice of right to cure default" by the Credit Union indicating that she was in default on her MasterCard by $1,515.50 and that she had exceeded her credit limit and had accumulated a total loan balance of $5,906.67. The letter of notice, signed by Linda Bodie, manager of the Credit Union, indicated that the last payment received from Ms. Tennant was on May 29, 1998. Ms. Bodie sent a subse-

---

1. Ms. Tennant states that she lives in Monongalia County although the city of Fairview is located in Marion County.

quent letter to Ms. Tennant on November 2, 1998, confirming her conversation with Ms. Tennant's husband, Moses Tennant, with regard to the delinquent MasterCard account. According to the letter, Mr. Tennant stated that Ms. Tennant would immediately begin making regular monthly payments of a minimum of $125 as soon as she received the proceeds from a lawsuit that was separate from these proceedings. On April 7, 2000, another letter was sent to Ms. Tennant confirming a subsequent conversation with Mr. Tennant, who explained that on or around April 15, 2000, Ms. Tennant had again agreed to resume making minimum payments of $125.

On August 1, 2000, the Credit Union filed a complaint against Ms. Tennant in the Magistrate Court of Kanawha County, alleging that Ms. Tennant had breached her agreement on the credit card account and that as of July 31, 2000, she owed the Credit Union $5,938.81. According to the Credit Union, Ms. Tennant's last payment was received on April 24, 2000. Consequently, based upon the $5,000 jurisdictional amount limitation in magistrate court, the Credit Union requested a judgment actually lower than the amount Ms. Tennant owed, specifically, $5,000 plus court costs and interest.

In Ms. Tennant's answer, dated October 6, 2000, she denied the matters set forth in the complaint and asserted a counterclaim alleging that: the Credit Union breached the contract first by not applying payments in a timely manner causing additional interest to accrue; that her privacy rights were violated by the Credit Union discussing her account with her husband; that the Credit Union refused to provide a copy of the original contract for the credit card; and, that her rights were violated by the Credit Union asking for court costs. Ms. Tennant then demanded a jury trial, court costs, and asked for punitive damages "to deter [the Credit Union] from acting in such a ma[nn]er again."

The case was set for a hearing on January 25, 2001, in the Magistrate Court of Kanawha County. Prior to that date, on January 17, 2001, Ms. Tennant filed a motion to have her case removed to the Circuit Court of "Marion County or in [the] alternative Kanawha [County]," even though she now claims that she lives in Monongalia County. Per Ms. Tennant's request, the case was subsequently removed from the magistrate court to the Kanawha County Circuit Court. On March 29, 2001, Ms. Tennant served upon the Credit Union a "Defendant's First Request for Production of Documents to Plaintiff" and a "Defendant's First Set of Interrogatories to Plaintiff." On October 24, 2001, the Credit Union served upon Ms. Tennant the "Plaintiff's Answers to Defendant's First Set of Interrogatories" and "Plaintiff's Answers to Defendant's Request for Production of Documents."

On March 8, 2002, the circuit court held a scheduling conference outlining the specific dates of pertinent activities to occur prior to the scheduled December 2, 2002 trial; however, Ms. Tennant did not attend the scheduling conference. Moreover, the record reflects that notice of the conference was sent to Ms. Tennant on February 28, 2002, and that a copy of the scheduling order was provided to her by mail following the completion of the scheduling conference.

On November 13, 2002, Ms. Tennant filed a motion to dismiss pursuant to West Virginia Rule of Civil Procedure 12(b)(3), asserting that the case should have been filed in Monongalia County where she declares she resides.[2] On that same day, Ms. Tennant filed a motion for continuance for the following reasons: "Due to the fact defendant did not receive the notice of the scheduling order dated March 8, 2002. Defendant discovered that a scheduling order had been done through a phone call to Kanawha County Circuit Court on October 29, 2002 when checking the status of the case";[3] due to the failure of notice she was unable to complete discovery and properly prepare for trial;

2. *See* footnote 1.

3. Curiously, Ms. Tennant's motion for a continuance mirrored a successful motion for continuance filed by the Credit Union on December 1, 2000, while this case was before the Magistrate

Court of Kanawha County. On the eve of a hearing, the Credit Union filed a "[m]otion to continue case due to the fact that plaintiff did not receive notice of hearing scheduled for December 4th. Plaintiff's attorney did not receive notice. Plaintiff discovered hearing date through a

and, because her husband "is having health problems at this time and will be going through testing and treatment shortly."

A week later, on November 21, 2002, Ms. Tennant filed a motion for a continuance for the pretrial conference that was scheduled for November 25, 2002, and stated as the sole basis of her request: "Defendant['s] husband is having health problems at this time." That same day, Mr. Tennant, who was not a party to this civil action, also filed a motion for a continuance of Ms. Tennant's pre-trial conference stating: "Health reasons. Note I have filed a motion to intervene in he [sic] above styled case." [4] On November 25, 2002, during a pre-trial conference, the circuit court denied Mr. Tennant's motion to intervene and Ms. Tennant's motion for a continuance. Thereafter, on November 29, 2002, Ms. Tennant filed a "motion for stay." [5] Nonetheless, pursuant to the March 8, 2002 scheduling order, the case proceeded to trial on December 2, 2002. Upon hearing testimony from Ms. Tennant and the Credit Union's manager, Ms. Bodie, as well as receiving various exhibits offered by both parties, the circuit court entered its December 5, 2002 order against Ms. Tennant and in favor of the Credit Union in the amount of $5,811.02, plus post-judgment interests and court costs. This appeal followed.[6]

## II.

## STANDARD OF REVIEW

■ The standard of review concerning appeals to this Court from non-jury trials, or bench trials, is set forth in Syllabus Point 1 of *Public Citizen, Inc. v. First National Bank,* 198 W.Va. 329, 480 S.E.2d 538 (1996):

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

With these standards in mind, we now consider whether the circuit court erred in this case.

## III.

## DISCUSSION

We begin our review in this appeal with Ms. Tennant's contention that the circuit court violated her rights by not providing her a jury trial on December 2, 2002 in the Circuit Court of Kanawha County. Ms. Tennant believes that since she requested a jury trial while her case was pending in the Magistrate Court of Kanawha County on October 6, 2000,[7] she should have been given a jury trial in the circuit court on December 2, 2002, after the case was removed to that court upon her request. Thus, we are left to decide whether a request in magistrate court

phone call to magistrate clerk on 11–30–00 to check status of case."

4. On November 18, 2002, Mr. Tennant filed a motion to intervene with the Circuit Court of Kanawha County in the case against Ms. Tennant.

5. Ms. Tennant argued that her motion should be granted: in order that she may hire a lawyer; due to the fact that she did not receive notice of the March 2, 2002, scheduling order until October 29, 2002, and thus, was unable to properly prepare; due to her husband and father's health problems that have created " a huge amount of mental and physical stress"; and, so that she could appeal to this Court the circuit's November 25, 2002 denial of her motion for a continuance.

6. This Court granted the appeal on July 25, 2003, and Ms. Tennant filed her brief on August 27, 2003. The Credit Union did not file a response. On December 11, 2003, the Clerk of this Court wrote to the Credit Union's counsel stating that the brief on behalf of the Credit Union could be filed within thirty days of the date of such letter. The Credit Union still did not file anything or respond in any fashion before this Court. Rule 10(e) of the Rules of Appellate Procedure provides:

*Failure to file brief.*-The failure to file a brief in accordance with this rule may result in the Supreme Court imposing the following sanctions: refusal to hear the case, denying oral argument to the derelict party, dismissal of the case from the docket, or such other sanctions as the Supreme Court may deem appropriate.

7. Ms. Tennant's brief incorrectly states that October 6, 2002, instead of October 6, 2000, was the date she requested the jury trial in magistrate court.

for a jury trial will automatically satisfy the requirements of Rule 38 of the West Virginia Rules of Civil Procedure[8] after a case has been removed to the circuit court.

In the Syllabus of *Barker v. Benefit Trust Life Insurance Company*, 174 W.Va. 187, 324 S.E.2d 148 (1984), in part, we held that "[w]here a trial by jury has been secured by a party to litigation under W.Va.R.Civ.P. 38 or 39(b), a party to such litigation has a right to an impartial and unbiased jury...." Moreover, a party's right to a trial by jury is guaranteed by the West Virginia Constitution in Article III, Section 13.[9] Even so, it is abundantly clear that a party may waive their right to trial by jury. *See* W.Va. R.Civ.P. 38(d) (states that "failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury."). For instance, in this case it is undisputed that at no time while Ms. Tennant's case was in the circuit court did she request a jury trial as provided by the West Virginia Rules of Civil Procedure. W.Va. R.Civ.P. 39(a) and (b) provide:

(a) By Jury. When trial by jury has been demanded as provided in Rule 38 or a timely motion or request therefor has been made under subdivision (b) of this rule, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded or requested shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the State.

(b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court upon motion or of its own initiative may at any time order a trial by a jury of any or all issues.

We first point out that there are two distinct procedural bodies of law governing our magistrate courts and circuit courts. The Rules of Civil Procedure for the Magistrate Courts of West Virginia are applicable to all civil cases in the magistrate courts of this state. W.Va.Rul.Civ.P.Magis.Cts. 1. Specifically, Rule 6 of those rules states that in cases where the amount in controversy exceeds twenty dollars, any party may elect to have a trial by jury as long as the request comes no later than "20 days after service of any first timely filed answer to the complaint." W.Va.Rul.Civ.Proc.Magis.Cts. 6A(b)(1). In this case, Ms. Tennant asserted this right in her Answer filed in the magis-

---

8. W.Va.R.Civ.P. Rule 38 provides:

(a) Right Preserved. The right of trial by jury as declared by the Constitution or statutes of the State shall be preserved to the parties inviolate.

(b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d). Such demand may be indorsed upon a pleading of the party.

(c) Same: Specification of Issues. In the demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable. If the party has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for

trial by jury of any other or all of the issues of fact in the action.

(d) Waiver. Subject to the provisions of Rule 39(b), the failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided, or a timely motion or request pursuant to Rule 39(b), may not be withdrawn without the consent of the parties.

9. W.Va. Const. Art. III, § 13 provides that the right to a jury trial exists:

In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; and in such suit in a court of limited jurisdiction a jury shall consist of six persons. No fact tried by a jury shall be otherwise reexamined in any case than according to rule of court or law.

trate court. As such, absent a subsequent error by the magistrate, if the case against Ms. Tennant had remained in the magistrate court, she would have received a jury trial. However, as noted previously, Ms. Tennant removed her case to the circuit court. The circuit courts are governed by the West Virginia Rules of Civil Procedure which apply to all trial courts of record. W.Va.R.Civ.P. 1. Under W.Va.R.Civ.P. 38(b), a party may demand a trial by jury by "serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue." Ms. Tennant failed to satisfy this rule in that she did not request a jury trial in the circuit court. Moreover, under 38(d), "the failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of a trial by jury." Because Ms. Tennant failed to file a demand for a jury trial in the circuit court as required by Rule 38(b), she waived her right.

█ Additionally, it is equally important to note that there is nothing in the record to suggest that Ms. Tennant objected to the lack of a jury trial during her December 2, 2002, bench trial. If a problem had presented itself during the circuit court's bench trial, Ms. Tennant had an obligation to bring it to the circuit judge's attention in order to provide that court with an opportunity to cure the alleged error. We have held that,

> [a]s a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.

Syllabus Point 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). *See also* Syllabus Point 4, *State v. Browning*, 199 W.Va. 417, 485 S.E.2d 1 (1997) ("This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record."); *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979) ("When there is an opportunity to speak, silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial"). The raise or waive rule was explained in *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989), as part of a design "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." Furthermore, we noted in *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996), that the raise or waive rule seeks to "prevent[ ] a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)."

This Court further stated in *Blair v. Maynard*, 174 W.Va. 247, 253, 324 S.E.2d 391, 396 (1984):

> Of course, the court must not overlook the rules to the prejudice of any party. The court should strive, however, to ensure that the diligent *pro se* party does not forfeit any substantial rights by inadvertent omission or mistake. Cases should be decided on the merits, and to that end, justice is served by reasonably accommodating all parties, whether represented by counsel or not. This "reasonable accommodation" is purposed upon protecting the meaningful exercise of a litigant's constitutional right of access to the courts. Therefore, ultimately, the *pro se* litigant must bear the responsibility and accept the consequences of any mistakes and errors. *See, e.g., Viles v. Scofield*, 128 Colo. 185, 261 P.2d 148 (1953); *Alexander v. Jeanerette*, 371 So.2d 1245 (La.Ct.App.1979).[10]

---

10. Simply because Ms. Tennant is a *pro se* litigant, does not bestow upon her the authority to completely evade the procedural rules of the circuit court. We clearly recognize, however, that *pro se* parties, like other litigants, should be provided the opportunity to have their cases "fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party." *Conservation Commission v. Price*, 193 Conn. 414, 419, n. 4, 479 A.2d 187, 192 n. 4

This record shows that Ms. Tennant was fully aware of, but did not participate in, a March 8, 2002, scheduling conference. Also, Ms. Tennant does not indicate that she discusses her desire for a jury trial at the pretrial conference on November 25, 2002 or during her December 2, 2002 bench trial. Accordingly, based on the above, we find that Ms. Tennant effectively waived her right to a jury trial.

■ Ms. Tennant makes several other brief and unsubstantiated arguments not supported by the record. As an initial matter, we observe that Ms. Tennant did not provide to this Court a transcript of the circuit court's December 2, 2002 trial, and as such, we are limited in our review of those proceedings. We have long held that " '[a]n Appellate Court will not reverse the judgment of an inferior court unless error affirmatively appear upon the face of the record, and such error will not be presumed, all the presumptions being in favor of the correctness of the judgment.' Point 2, syllabus, *Shrewsbury v. Miller*, 10 W.Va. 115 [1877]." Syllabus Point 4 of *Alexander v. Jennings*, 150 W.Va. 629, 149 S.E.2d 213 (1966). Similarly, in Syllabus Point 5 of *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966), we held: "An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment."

We have further explained that "[w]hen the alleged errors of the trial court involve the sufficiency of the proof and the testimony upon which the judgment of the trial court is based is not made a part of the record for appellate purposes, the appellate court must presume that the judgment of the trial court is correct and warranted by the testimony." Syllabus Point 5, *Pozzie v. Prather*, 151 W.Va. 880, 157 S.E.2d 625 (1967). Consequently, the burden is on Ms. Tennant to produce a record that discloses affirmatively the alleged reversible errors committed at trial.[11] Ordinarily, the failure to do so requires an affirmance of the judgment of the lower court, since error will not be presumed in the absence of an affirmative showing. *See Ward v. County Court*, 141 W.Va. 730, 93 S.E.2d 44 (1956); *Scott v. Newell*, 69 W.Va. 118, 70 S.E. 1092 (1911); *Dudley v. Barrett*, 58 W.Va. 235, 52 S.E. 100 (1905); *McGraw v. Roller*, 47 W.Va. 650, 35 S.E. 822 (1900); *Zumbro v. Stump*, 38 W.Va. 325, 18 S.E. 443 (1893).

Ms. Tennant next contends that the contract whereby she obtained the MasterCard is void because there were no terms, conditions, or interest rates included and it was not signed by both parties. Upon reviewing the record, we find that this is simply incorrect. Ms. Tennant's credit card application was signed by both Ms. Tennant and the Credit Union. In addition, immediately below where Ms. Tennant checked a box to apply for the MasterCard, the agreement provides: "You acknowledge that you have previously received and read the Agreement(s) for the credit services checked above. By signing below you agree to be bound by the terms of the Agreement for each service checked." Moreover, the record reflects Ms. Tennant was given copies of the MasterCard agreement at that time.

■ We believe that Ms. Tennant was well aware of her credit limit and the surrounding terms of the credit card agreement. This is

---

(1984). Nonetheless, Ms. Tennant demonstrated her familiarity with the West Virginia court system as she filed myriad motions before the magistrate and circuit courts and even filed upon the Credit Union a comprehensive request for a production of documents as well as twenty-five interrogatories. Moreover, Ms. Tennant had multiple opportunities to request a jury trial and failed to do so. Thus, as we have explained, her failure to object, specifically during her bench trial, constituted a further waiver to argue this issue on appeal.

11. *See* Syllabus Point 3 of *Rollins v. Daraban*, 145 W.Va. 178, 113 S.E.2d 369 (1960) (" 'An Appellate Court will not reverse the judgment or decree of an inferior court, unless error affirmatively appear on the face of the record; and such error will not be presumed, all presumptions being in favor of the judgment or decree.' *Richardson v. Donehoo*, 16 W.Va. 685, Pt. 14 Syllabus."); *see also* Syllabus Point 4 of *Rollins* (" 'A plaintiff in error assumes upon himself the burden of showing error in the judgment complained of.' *Griffith v. Corrothers*, 42 W.Va. 59, Pt. 2 Syllabus [24 S.E. 569].").

evidenced by her subsequent requests for an increase in her credit limit that included the very terms of which she claims she had no knowledge. For instance, located just below her signature on each of her applications to increase her credit limit, in large capital letters, the annual percentage rate of 13.9 percent is provided, along with additional information, including, but not limited to late fees, overlimit fees, lost card fees, information on the grace period for purchases, and the balance calculation method. We specifically find that a valid contract existed and Ms. Tennant was in breach of that contract.

 Ms. Tennant also maintains that the Credit Union intentionally allowed her to go over the set credit limit so that they could "saddle her with late charges and over-the-limit fees." There simply is no evidence in the record before this Court to support such an argument. Ms. Tennant applied for a credit card and was approved for a $1,500 limit. Subsequently, on various occasions, she requested and was approved for increases in her credit limit. Then, it is undisputed that Ms. Tennant accumulated charges amounting to the maximum credit limit set forth in her MasterCard agreement. Likewise, it is undisputed that as Ms. Tennant failed to make the required monthly payments, the interest charges continued to accumulate on the account as provided by the credit card agreement. As such, the only determination we are able to make with regard to Ms. Tennant's contention is that she accumulated a debt for which she is legally responsible.

 Ms. Tennant further contends that the circuit court denied her motion for a continuance dated October 29, 2002 stating that her reasons were for health reasons of her father and husband and that she wished to hire an attorney. With regard to the circuit court's denial of her motion to continue, this Court has long held that "[a] motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syllabus Point 2, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979). In Syllabus Point 3 of *Bush*, we held that "[w]hether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis in light of the factual circumstances presented, particularly the reasons for the continuance that were presented to the trial court at the time the request was denied." We further provided in Syllabus Point 2 of *Nutter v. Maynard*, 183 W.Va. 247, 395 S.E.2d 491 (1990):

'It is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except in case it clearly appears that such discretion has been abused.' Syl. pt. 1, *Levy v. Scottish Union & National Ins. Co.*, 58 W.Va. 546, 52 S.E. 449 (1905).

 In Ms. Tennant's case, her motion for a continuance was filed on November 13, 2002, not October 29, 2002, and did not state that she wished to have an attorney. Moreover, her entire discussion of the health problems listed in that motion was limited to her husband and consisted entirely of the following: "Defendant['s] husband is having health problems at this time and will be going through testing and treatment shortly." Ms. Tennant did not explain the testing of which she referred or even what treatment her husband needed. Significantly, she did not include dates, times, or any other pertinent information. This clearly was not sufficient to justify a motion for continuance and it was well within the sound discretion of the circuit court to deny such a motion.

Ms. Tennant next argues that the circuit court erred in denying her motion to dismiss because of improper venue. We find no merit in this argument. On November 13, 2002, Ms. Tennant filed a motion to dismiss pursuant to rule 12(b)(3) of the West Virginia Rules of Civil Procedure [12] stating that this

12. Rule 12(b) provides:
How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (3) improper venue....

case should not have been brought in Kanawha County. Moreover, even though Ms. Tennant lives in Fairview, West Virginia, which is located in Marion County, she states that she resides in Monongalia County and that the case should have been brought in that county. We find Ms. Tennant's argument difficult to understand particularly by the fact that when she filed a motion on January 17, 2001, to have her case removed from the magistrate court to the circuit court, she requested that it be removed to "Marion County or in alternative Kanawha [County]." As such, Ms. Tennant not only acquiesced to the venue of the Circuit Court of Kanawha County, she actually requested that the case against her be removed to that court. Thus, this issue is entirely without merit.

Ms. Tennant also declares that the circuit court erred by not allowing her husband, Moses Tennant, to intervene as a party in the case. She believes that Mr. Tennant has a right to intervene because "when money is being taken out of household it would affect my husband's interest." In *State ex rel. Leung v. Sanders*, 213 W.Va. 569, 578, 584 S.E.2d 203, 212 (2003), we explained:

> "Generally, standing is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (quoting Black's Law Dictionary 1413 (7th ed. 1999)). "'Our standing inquiry focuses on the appropriateness of a party bringing the questioned controversy to the court.'" *Id.*, 213 W.Va. at 95, 576 S.E.2d at 822 (quoting *Louisiana Envtl. Action Network v. Browner*, 87 F.3d 1379, 1382 (D.C.Cir.1996)). One specific aspect of standing is that one generally lacks standing to assert the rights of another.

■ Clearly, it was Ms. Tennant who signed the contract with the Credit Union to obtain the credit card and Mr. Tennant was not a party to that transaction. Additionally, on August 1, 2000, the Credit Union filed the civil action solely against Ms. Tennant for her default on her MasterCard account. As such, Mr. Tennant simply is not a party in this action and any appeal with regard to Mr. Tennant's standing to intervene in any case cannot be asserted by Ms. Tennant. The circuit court did not commit error.

■ Ms. Tennant also attests that the circuit court erred as it "would not allow [her] to present [her] case the way me and my husband had prepared it by reading it from paper. The Judge told me to do it in my own words." Ms. Tennant further argues that the circuit court failed to allow her to adequately present her case because she believed that the circuit judge "was more concerned in getting the trial over with than justice." Ms. Tennant does not provide to this Court any examples of how the circuit court acted in an erroneous manner or in a manner that was not consistent with the laws of West Virginia. Rather, Ms. Tennant's assertions lack specificity and particularity and are completely unsupported. In the absence of such supporting arguments or authority, we deem these assignments of error to have been waived. *See State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only in passing but are not supported with pertinent authority [ ] are not considered on appeal.").[13] Accordingly, we find that the circuit court did not commit error.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of

---

13. *See also*, Syllabus Point 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."); *Sale ex rel. Sale v. Goldman*, 208 W.Va. 186, 199–200 n. 22, 539 S.E.2d 446, 459–60 n. 22 (2000) (per curiam) (deeming assignment of error that "is terse and lacks any authority to support it" to have been waived); *Tiernan*

*v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived." (citation omitted)); *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." (internal quotations and citation omitted)).

Kanawha County entered on December 5, 2002, is affirmed.

Affirmed.

Justice DAVIS concurs and files a concurring opinion.

Justice ALBRIGHT concurred in part, dissented in part, and filed opinion joined by Justice STARCHER.

DAVIS, J., concurring:

(Filed June 18, 2004)

In this proceeding Ms. Tennant argued that she was denied her right to a jury trial. The majority opinion concluded that Ms. Tennant waived her right to a jury trial. I agree with the majority's determination that a waiver occurred. I write separately because I believe a waiver occurred on different grounds from those relied upon by the majority opinion. Thus,for the reasons set forth below, I respectfully concur.

### We Have No Rule Governing Jury Demand upon Removal of a Case to Circuit Court

The majority opinion found that Ms. Tennant waived her right to a jury trial by failing to request a jury trial under Rule 38 of the West Virginia Rules of Civil Procedure. I agree with the majority's conclusion that there was a waiver. I do not agree with its rationale. Once a party properly demands a jury trial in magistrate court, the party should not be required to comply with Rule 38 upon removal to the circuit court. At a minimum, the party should be required only to alert the trial court that a jury trial was demanded in the magistrate court. Several factors have guided me to this position.

First, the authority to remove a civil action from magistrate court to circuit court is governed by W. Va.Code § 50–4–8 (1978) (Repl.

Vol. 2000).[1] This statute is silent as to whether parties must file new pleadings when a case is removed to circuit court. Moreover, the West Virginia Rules of Civil Procedure are silent on this issue. The accepted practice has been that parties do not have to file new pleadings when a case is removed from magistrate court to circuit court. The magistrate court pleadings are used. *See Istituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Prod., Inc.,* 47 F.R.D. 310, 313 (S.D.N.Y.1969) (citation omitted) ("Generally, [parties] in a removed action [are] not required to refile or revise old pleadings[.]"). *See also Freeman v. Bee Machine Co., Inc.,* 319 U.S. 448, 452, 63 S.Ct. 1146, 1147, 87 L.Ed. 1509, 1513 (1943) (noting that a court has the power to order a repleading if it deems that step necessary). A review of the file in this case shows that no new pleadings were filed. The case was tried on the pleadings filed in magistrate court.

The fact that new pleadings are not filed in an action removed to circuit court is an important jurisdictional issue. In Syllabus point 5 of *Cable v. Hatfield,* 202 W.Va. 638, 505 S.E.2d 701 (1998), we held:

Rule 3[b] of the West Virginia Rules of Civil Procedure requires, in mandatory language, that a completed civil case information statement accompany a complaint submitted to the circuit clerk for filing. In the absence of a completed civil case information statement, the clerk is without authority to file the complaint.

Notwithstanding *Cable's* pronouncement, a civil case information statement is not filed in a removal action. The pleadings filed in the magistrate court are used, and, thus, deemed to satisfy all requirements for initiating an action in circuit court. Again, there is no actual rule governing this matter. Its resolution stems from common practice.

---

1. W. Va.Code § 50–4–8 reads in full:
 At any time before trial in a civil action involving less than three hundred dollars the action may be removed to circuit court upon the concurrence of all parties and upon the payment of the circuit court filing fee. At any time before trial in a civil action involving three hundred dollars or more, any party may, upon payment of the circuit court filing fee, cause such action to be removed to the circuit court. All appropriate documents shall then be forwarded along with such fee to the clerk of the circuit court. The matter shall then be heard by the circuit court.
 Rule 12(a) of the Magistrate Court Rules of Civil Procedure imposes a deadline for when a motion to remove must be filed.

Insofar as our laws are silent on whether new pleadings must be filed in a removal action, so, too, are they silent regarding the requirements for demanding a jury trial in a removal action. The majority opinion has, without any substantive analysis, determined that in all removal actions, litigants must comply with Rule 38 in order to demand a jury trial. I believe that the majority opinion on this issue is wrong. In essence, we permit the jurisdictional civil case information statement to be overlooked. That is, the majority permits Rule 3(b)'s *jurisdictional* requirement to be overlooked in a removal action, but imposes Rule 38's *nonjurisdictional* requirement on litigants. "To me this is a strange and illogical anomaly which locates the cart well ahead of the horse." *Crum v. Ward*, 146 W.Va. 421, 459, 122 S.E.2d 18, 38–39 (1961) (Haymond, J., dissenting).

I believe the best resolution of the jury issue should have been guided by the way federal courts address the matter in actions removed from state court to federal courts. "[F]ederal appellate case law supports the view that a party need not file a new jury demand in federal court if one that would have satisfied the federal requirements was filed in state court." *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 415 (5th Cir.2002). *See* Fed. R. Civ. Pro., Rule 81(c) ("A party who, prior to removal, has made an express demand for trial by jury in accordance with state law, need not make a demand after removal."). The reason for this is "because the previously filed [jury] demand became a part of the federal court record." *Mondor v. United States Dist. Court for the Cent. Dist. of Cal.*, 910 F.2d 585, 586 (9th Cir.1990). I believe the federal approach to this issue should have been adopted because the magistrate court jury demand becomes a part of

the record in circuit court when a case is removed.[2] Therefore, I concur.

ALBRIGHT, Justice, concurring in part, dissenting in part:

(Filed June 30, 2004)

I concur in the judgment rendered in this case. The appellant complains that she did not receive a jury trial after she made a proper demand for a jury trial in magistrate court but failed to renew that request after, upon her motion, the case was removed from magistrate court to circuit court.

As the majority opinion also points out, appellant failed to object to the lack of a jury trial when the circuit court commenced a bench trial in her case on December 2, 2002. Accordingly, in my judgment, appellant clearly waived her right to a jury trial by not entering an objection at that point. I, therefore, concur in the result.

However, I dissent from the reasoning employed to reach the result. The majority opinion is grounded on the fact that appellant failed to make a demand for a jury trial under Rule 38(b) of the West Virginia Rules of Civil Procedure after removal of the case to circuit court. I believe that once an effective demand for a jury trial was made in the magistrate court, that demand should remain effective upon the subsequent removal of the case to the circuit court. In short, I believe our court system should favor jury trials not undertake to construct as many exceptions and pitfalls as possible. Moreover, it should be a matter of importance to this Court to recognize that many proceedings in the magistrate courts involve unrepresented persons not intimately familiar with court procedures.

Finally, I would note that the statute permitting removal to the circuit court, W.Va. Code § 50-4-8, contemplates first, that the civil action first initiated in the magistrate

---

**2.** Ms. Tennant demanded a jury trial in her answer to the complaint in magistrate court. That answer became a part of the record in circuit court. No new answer was required or filed. I believe Ms. Tennant waived her right to a jury trial because she permitted a bench trial to occur without raising any objections to the trial court. "[F]ailure to object to alleged errors at trial is considered a technical waiver of the right to object to the alleged error on appeal." *Adkins v.*

*Foster*, 187 W.Va. 730, 732 n. 3, 421 S.E.2d 271, 273 n. 3 (1992) (citing *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 496, 345 S.E.2d 791, 795 (1986)). Moreover, "when a party does not reassert the right to a jury trial prior to a bench trial ... or knowingly participates in a bench trial, ... that party waive[s] his right to trial by jury through inaction or inadvertence." *Winter v. Minnesota Mut. Life Ins. Co.*, 199 F.3d 399, 407 (7th Cir.1999).

court is in totality transferred to the circuit court by its removal. Secondly, the statute expressly provides that all appropriate documents shall be forwarded to the clerk of the circuit court upon the removal of a civil action from the magistrate court. Therefore, in plain terms, the statute contemplates that a demand for a jury trial first made in magistrate court would be physically transferred to the circuit court upon removal. Such a demand should be honored in circuit court.

The majority opinion plainly splits a hair that does not need to be and should not be split.

I am authorized to state that Justice STARCHER joins in this opinion.

Starcher, J., filed dissenting opinion.