# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Richard Nyamekye,**
**Plaintiff Below, Petitioner**

**vs) No. 14-1330** (Monongalia County 13-C-288)

**West Virginia University Hospitals, Inc.,**
**a West Virginia corporation,**
**Defendant Below, Respondent**

**FILED**

November 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Richard Nyamekye, by counsel Crystal Hawkins Castleberry and Jo Marie Pitrolo, appeals the December 2, 2014, order of the Circuit Court of Monongalia County that granted summary judgment to respondent. In his complaint, petitioner alleged racial discrimination and wrongful discharge. Respondent West Virginia University Hospitals, Inc., ("WVUH") by counsel, Elizabeth D. Walker, Christine S. Vaglienti, and Dana M. Bowers filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Richmond Nyamekye was employed by West Virginia University Hospitals as a Departmental Support Specialist from March 26, 2012, until he was terminated from employment on April 16, 2012. Petitioner's direct supervisor during his employment was William Dumire, who was employed by respondent as the Director of Information Technology Services. The first ninety days of petitioner's employment was a probationary period. The Employee Handbook states, "in most cases, the probationary period will last for 90 days from your date of hire, but it is subject to the extension at the discretion of WVUH. Obviously, your employment could end at your option or ours before the end of the probationary period." The handbook also stated that progressive discipline does not apply until after the conclusion of the probationary period. Petitioner is African-American, and was the only African-American in the IT department. All of the other employees in the IT department were Caucasian.

In order to attain the position, petitioner first interviewed with Deveran George, Senior Human Resources Generalist for respondent. In her deposition, Ms. George testified that she interviewed petitioner on an open interview day, at the Erickson Alumni Center, and afterward conducted a one-hour long interview. Petitioner thereafter interviewed with a committee

1

assembled by Mr. Dumire. The committee used scorecards created by Mr. Dumire in their evaluation of petitioner during the interview. Respondent asserts that Mr. Dumire alone made the decision to hire petitioner. Ms. George testified that the hiring of petitioner was a "collective decision." Petitioner holds a bachelor degree from West Virginia University and at the time of events in question was enrolled in West Virginia University's Executive MBA program.

During the first week of his employment, petitioner requested a leave of absence to attend a mandatory trip to Washington D.C. for the WVU Executive MBA program. Mr. Dumire approved the leave of absence. On April, 3, 2012, while petitioner was on his leave of absence, Mr. Dumire sent petitioner an e-mail highlighting certain policies from the handbook, including leave, illness, and attendance. Mr. Dumire also indicated that he would like to speak with petitioner regarding "Expectations-honesty/trust; expectations-long term technical ability; expectations-teamwork; evaluation of current technical ability; and discussion of the probationary period."

On April 16, 2012, Mr. Dumire completed a Corrective Action Notice in which he discharged petitioner. In the notice Mr. Dumire cited

> (1) Attendance-arrived 15 minutes late on Tuesday March 27, Did not notify supervisor or other staff; (2) attendance-left work area multiple times on March 27, 28, and 29, without notifying supervisor; (3) does not possess the necessary hardware qualifications, requirements outlined within the job description and as described/alluded to in employees resume during interview process; (4) does not collaborate well with existing team.

Petitioner filed suit on April 13, 2013, alleging wrongful discharge, and racial discrimination. In his complaint, petitioner alleges that he was subjected to a hostile work environment, disparate treatment, and wrongfully discharged. Petitioner asserts that during his employment he was never given a password to the Axium software, and was prohibited from doing his job as a result. Petitioner also alleges that his co-workers had the password to the software. Petitioner next asserts that he performed all tasks he was assigned to perform, timely, competently and efficiently. With respect to his tardiness on March 27, 2012, petitioner contends that he arrived at work at 7:45 a.m., but that at approximately 8:00 a.m. he walked outside to retrieve his security badge from his vehicle.[1]

Petitioner also alleges that at various times during his first week of employment petitioner noticed that his co-workers seemed to have him under " surveillance," and wanted him to be accountable to them even though they held equal positions with similar pay. Petitioner complained of this to Mr. Dumire. Mr. Dumire did not report petitioner's complaint to respondent's human resources department. Mr. Dumire held a meeting at which petitioner alleges that Mr. Dumire stated that petitioner was "different," but that all of the parties needed to get along. Mr. Dumire contends that he said that "everyone learns differently".

---

[1] Petitioner asserts this incident occurred on March 28, 2012.

2

Petitioner also alleges that one co-worker used the word "homie" regarding him, and subjected petitioner to stories regarding black men acting as drug dealers in trailer parks. On April, 3, 2012, while petitioner was on his leave of absence, Mr. Dumire sent petitioner an e-mail summarizing policies, and advised petitioner that Mr. Dumire needed to speak with petitioner regarding "honesty and trust". Petitioner's former co-workers testified that they never discussed "honesty and trust" with Mr. Dumire.

On April 5, 2012, Mr. Dumire called a meeting with petitioner. The exact events of the meeting are in dispute. Petitioner alleges that Mr. Dumire asked him to sign the e-mail, and advised that petitioner would need to get his A+ certification within six months. During the same conversation Mr. Dumire told petitioner that if he failed to resign by April 13, 2012, he would be terminated. Petitioner then alleges that Mr. Dumire called a meeting of the department and informed petitioner and his co-workers that he advised petitioner to resign by April 13, 2012, or he would be terminated.

Respondents filed a motion for summary judgment, and petitioner filed a response. On December 2, 2014, the circuit court entered an order granting respondent's motion for summary judgment. Requesting a reversal of the order, petitioner raises five assignments of error on appeal. Petitioner asserts that the circuit court erred by failing to consider the evidence in the light most favorable to petitioner when petitioner made a prima facie case of racial discrimination; that the circuit court erred in finding that the same person hired and fired petitioner; that the circuit court erred in failing to consider respondent's alleged violation of its own affirmative action policy as an inference of discriminatory conduct[2]; and that the circuit court erred in failing to consider that respondent's reasons for firing him were pre-textual.[3]

_____

[2] Petitioner fails to assert a nexus between his hiring and firing, and the application of respondent's affirmative action policy. *See Brown v. McLean*, 159 F.3d 898 (4th Cir. 1998). As we are affirming the circuit court's decisions on other grounds, we decline to consider this assignment of error.

[3] Petitioner also claims that the circuit court erred in dismissing his tort of outrage claim. However, petitioner does not set forth proper argument in order to preserve this claim. West Virginia Rule of Appellate Procedure 10(c)(7) outlines the requirements for briefs:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

*See also* Syl. Pt. 2, *W.V. Dept. of Health & Human Res. Emp. Fed. Credit Union v. Tennant,* 215 W.Va. 387, 599 S.E.2d 810 (2004). Accordingly we decline to consider this particular assignment of error.

(continued . . .)

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *id*. Finally,

> "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. Pt. 2, *id*.

Petitioner's main contentions are (1) that the circuit court erred in granting summary judgment, given that petitioner asserted a prima facie case of discrimination; and (2) that there are genuine issues of material fact as to whether Mr. Dumire alone hired and fired petitioner; and (3) that the stated reasons for petitioner's discharge were pretextual. We disagree. Regarding allegations of racial discrimination, we have held,

> Although the plaintiff has the ultimate burden of proving elements of the claim of discrimination by a preponderance of the evidence, the showing the plaintiff must make as to the elements of the *prima facie* case in order to defeat a motion for summary judgment is *de minimis.* In determining whether the plaintiff has met the *de minimis* initial burden of showing circumstances giving rise to an inference of discrimination, the function of the circuit court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the circuit court itself to decide what inferences should be drawn.

Syl. Pt. 4, *Hanlon v. Chambers*, 195 W.Va. 99, 464 S.E.2d 741 (1995). Regarding the burden of proof, we further held that,

> [t]he first two parts of the test are easy, but the third will cause controversy. Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a

large operation which show that members of the protected class received substantially worse treatment than others.

*Conaway v. E. Associated Coal Corp.*, 178 W.Va. 164, 170-71, 358 S.E.2d 423, 429-30 (1986) (internal footnotes omitted).

The circuit court found that petitioner did not provide evidence sufficiently linking the termination decision to his status as a member of a protected class. We agree, and find that petitioner did not provide a sufficient nexus between his race and the decision to terminate his employment. First, petitioner was a probationary employee at the time of his discharge. The employee handbook, which petitioner was given when he was hired, states the following regarding the initial employment probationary stage, "in most cases, the probationary period will last for 90 days from your date of hire, but it is subject to the extension at the discretion of WVUH. *Obviously, your employment could end at your option or ours before the end of the probationary period*." (emphasis added). It is clear that as a probationary employee, petitioner was subject to termination of employment at respondent's option prior to the end of the probationary period.

Next, we find that the circuit court did not err in applying a strong inference that discrimination was not a determining factor for the adverse action due to petitioner being hired and fired by the same person. Relying upon *Johnson v. Kilmer*, 219 W.Va. 320, 633 S.E.2d 265 (2006), the circuit court found that Mr. Dumire testified during his deposition that the hiring decision for the subject position was solely his. Mr. Dumire further testified that a committee interviewed all of the candidates and submitted the candidate's scores to him, as he was the ultimate decision maker. In *Johnson*, we cited the Fourth Circuit decision, *Proud v. Stone,* 945 F.2d 796 (4th Cir.1991) which held, "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Id.*, 219 W.Va. at 325, 633 S.E.2d at 270.

In this instance, it is undisputed that petitioner's employment was terminated shortly after his hiring.[4] Petitioner has not provided evidence to contradict Mr. Dumire's claim that he was the sole person to make the decision to hire and fire petitioner. Not only did Mr. Dumire testify that

_____

[4] Petitioner cites the testimony of Deveran George to support his contention that he was hired by a committee. However, a review of Ms. George's full testimony reveals that while Ms. George stated that the decision to hire petitioner was a collective one, that the ultimate decision, or final say, was given to Mr. Dumire. Further review of petitioner's response to the motion for summary judgment reveals that neither petitioner nor respondent attached that particular portion of Ms. George's deposition to the motion for summary judgment or response to motion for summary judgment. Therefore, it appears the circuit court did not have the opportunity to review that testimony prior to granting summary judgment. "The appellate review of a ruling of a circuit court is limited to the very record there made and will not take into consideration any matter which is not a part of that record." Syl. Pt. 2, *State v. Bosley*, 159 W.Va. 67, 218 S.E.2d 894 (1975). Accordingly, we find no error in the circuit court's ruling that there was no uncontroverted testimony that Mr. Dumire solely hired and fired petitioner.

he alone made the decision to hire and fire petitioner, petitioner testified that he had no first-hand knowledge of the hiring process. Accordingly, we find the circuit court did not err in making this finding.

In addition, we find no merit to petitioner's claim that the reasons for his discharge were pretextual. The record reflects that petitioner was an at-will probationary employee who could be fired at any time during his probationary period. Further, Mr. Dumire stated that petitioner lacked the technical qualifications which were listed on his resume, had attendance problems, and did not collaborate with his co-workers. Additionally, petitioner failed to assert sufficient evidence linking his termination to his race. Prior to his termination, petitioner did not complain that his difficulties were due to his race, and while petitioner complains that he was subjected to disparate treatment and an offensive conversation, in which a co-worker referenced "black drug dealers" and referred to another person as "homie," petitioner is unable to establish a nexus between his race and his termination from employment.

> In disparate treatment cases under the West Virginia Human Rights Act, W.Va. Code, 5-11-9 (1992), proof of pretext can by itself sustain a conclusion that the defendant engaged in unlawful discrimination. Therefore, if the plaintiff raised an inference of discrimination through his or her prima facie case and the fact-finder disbelieves the defendant's explanation for the adverse action taken against the plaintiff, the factfinder justifiably may conclude that the logical explanation for the action was the unlawful discrimination.

Syl. Pt. 5, *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561(1996). Because the circuit court found (1) that petitioner did not provide a prima facie case of discrimination, and (2) that justifiable non-discriminatory reasons exist for petitioner's termination, the circuit court was not required to consider pretext as evidence of discrimination. Accordingly, we find the circuit court did not err in this regard.

For the foregoing reasons, we affirm the circuit court's December 2, 2014, order that granted summary judgment to respondent.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6